# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

DAVID PILL, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

BIRNER DENTAL MANAGEMENT SERVICES, INC.,
FREDERIC W.J. BIRNER,
JOSHUA S. HOROWITZ,
BURTON J. RUBIN,
BRADLEY TIRPAK,
GREGORY GALE FULTON,
JOHN M. CLIMACO, and
THOMAS D. WOLF,

      Defendants.

---

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND JURY DEMAND

---

Plaintiff, David Pill ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE OF THE ACTION

1. This action stems from a proposed transaction (the "Proposed Transaction" or "Merger") announced on October 3, 2018, pursuant to which Birner Dental Management Services, Inc. ("Birner" or the "Company") will be acquired by Mid-Atlantic Dental Service Holdings LLC ("Mid-Atlantic Dental") through its wholly owned subsidiary, Bronco Acquisition, Inc. ("Bronco").

2. On October 3, 2018, the Company's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") with Mid-Atlantic Dental and Bronco. Pursuant to the Merger Agreement, Mid-Atlantic Dental will acquire all of the outstanding shares of Birner for (i) $10.62 per share in cash, and (ii) one contractual Contingent Value Right ("CVR") per share of Birner common stock, which will entitle shareholders to an additional cash payment of up to $0.13 per share under certain circumstances following the closing of the Proposed Transaction ("Merger Consideration"), for a total enterprise value of approximately $38.4 million. Upon completion of the Merger, Birner will be integrated into Mid-Atlantic Dental as a wholly owned subsidiary of Mid-Atlantic Dental.

3. On October 25 2018, Defendants (as defined below) filed a proxy statement on a Schedule 14A (the "Proxy") with the United States Securities and Exchange Commission ("SEC"). As described herein, the Proxy omits certain material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 140.14a-9 ("Rule 14a-9") promulgated thereunder.

4. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' conduct, as described herein.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, an owner of Birner common stock.

9. Defendant Birner is a Colorado corporation, with its principal executive offices located in Denver, Colorado. Birner common stock is listed on the over-the-counter under the symbol "BDMS."

10. Defendant Frederic W.J. Birner ("F. Birner") is the Company's Chief Executive Officer and a director of the Company.

11. Defendant Joshua S. Horowitz ("Horowitz") is the Interim Chairman of the Board and a director of the Company.

12. Defendant Burton J. Rubin ("Rubin") is a director of the Company.

13. Defendant Bradley Tirpak (Tirpak") is a director of the Company.

14. Defendant Gregory Gale Fulton ("Fulton") is a director of the Company.

15. Defendant John M. Climaco ("Climaco") is a director of the Company.

16. Defendant Thomas D. Wolf ("Wolf") is a director of the Company.

3

17. The defendants listed in ¶¶ 10-16 are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants and Birner are referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

19. According to the Company's Form 10-K for the year ended December 31, 2017, Birner "is a dental service organization devoted to servicing geographically dense dental practice networks in select markets," including Colorado, New Mexico and Arizona. The "Company provides a solution to the needs of dentists, patients and third-party payors by allowing the Company's affiliated dentists to provide high-quality, efficient dental care in patient-friendly, family practice settings."

20. On October 3, 2018, Birner and Mid-Atlantic Dental issued a press release announcing that they had entered into a definitive agreement where Birner will be acquired by Mid-Atlantic Dental. According to the press release, Mid-Atlantic Dental "will purchase all of the outstanding shares of Birner Dental Management Services for $10.62 in cash. Shareholders will also receive one Contingent Value Right (CVR) per share of Birner common stock owned. The CVR entitles shareholders to an additional cash payment of up to $0.13 per share under certain circumstances following the closing of the transaction." The press release further stated, in relevant part, the following:

> **Plymouth Meeting, PA and Denver, Colorado** – October 3rd, 2018 – Mid-Atlantic Dental Service Holdings LLC, operating as Mid-Atlantic Dental Partners, a dental support organization ("DSO") dedicated to improving the delivery of dental services for dentists and their patients and a portfolio company of S.C. Goldman & Company, LLC ("S.C. Goldman"), announced today that it has entered into a definitive agreement to acquire Birner Dental Management Services, Inc. (OTCQX: BDMS) ("Birner"). Under the terms of the agreement, an affiliate of Mid-Atlantic Dental Partners will purchase all of the outstanding shares of Birner Dental Management Services for $10.62 in cash. Shareholders will also receive one Contingent Value Right (CVR) per share of Birner common stock owned. The CVR entitles shareholders to an additional cash payment of up to $0.13 per share under

4

certain circumstances following the closing of the transaction. The total consideration payable to Birner's shareholders (assuming full payout of the CVR) represents a 105% premium to Birner's closing share price of $5.25 on October 2, 2018.

Birner was founded in 1995 and operates dental practice affiliates under the Perfect Teeth® brand throughout Colorado, Arizona, and New Mexico. With more than 100 dentists, Perfect Teeth's philosophy of "letting dentists be dentists" melds perfectly with the "dental partnership" approach that has defined the business philosophy for both owners and associate dentists of Mid-Atlantic Dental Partners.

Founded in 2016, Mid-Atlantic Dental Partners offers dentists a DSO model that supports dental professionals by providing marketing, financial, practice information and other business services so dentists can focus on delivering the highest quality care to their patients. In addition, Mid-Atlantic Dental Partners offers associate dentists an opportunity to participate in the financial success of the practices. Over the last two years, Mid-Atlantic Dental Partners has built an exceptional management team with deep dental, operational, and entrepreneurial experience.

The acquisition will increase Mid-Atlantic Dental Partners affiliate offices projected annual revenues to more than $100 million.

"Taking the Birner platform to the next level is a truly exciting step in the continued development of Mid-Atlantic Dental Partners into a nationally recognized DSO," said Mitchell Goldman, Chief Executive Officer of Mid-Atlantic Dental Partners. "We look forward to partnering with Birner to accelerate the redevelopment of all of the Perfect Teeth-branded practices through investment in technology. Dentists, hygienists, dental assistants and office staff are the true assets of our practices, and we will strive to raise the importance of all dental professionals in improving the overall health care of patients and populations. We intend to make substantial investments in the people, equipment and technology of these dental practices," Mr. Goldman continued.

"The Mid-Atlantic Dental team and organization is a fantastic cultural fit with the business we have built over 23 years at Birner," said Fred Birner, Chief Executive Officer of Birner. "Mid-Atlantic's ability to provide the additional resources we need to continue to build and expand our brand while investing in our providers will allow Birner to provide better services to all of its patients. Perfect Teeth shares Mid-Atlantic's belief that our dental professionals are the backbone of the company and our most valuable asset."

Birner will become Rocky Mountain Dental Services Holdings, a wholly-owned subsidiary of Mid-Atlantic Dental Services Holdings, at closing of the transaction. Birner will continue to be based in Denver, Colorado and will be locally managed.

5

> The newly acquired locations will continue to do business under the Perfect Teeth brand.
>
> Houlihan Lokey served as the exclusive financial advisor and Duane Morris LLP, DLA Piper LLP and Waller LLP served as legal advisors to Mid-Atlantic Dental Partners. DLA Piper LLP served as legal advisors to S.C. Goldman & Company. Cain Brothers, a division of KeyBanc Capital Markets Inc., served as the exclusive financial advisor and Faegre Baker Daniels LLP served as legal advisor to Birner Dental Management Services, Inc.

21. In soliciting shareholder approval for the Proposed Transaction, the Company filed the Proxy on October 25, 2018, which purports to contain a summary and overview of the Proposed Transaction, but omits certain critical information, rendering portions of the Proxy materially incomplete and/or misleading, in violation of the Exchange Act provisions discussed herein. As a result, Birner shareholders lack material information necessary to allow them to make an informed decision concerning whether to vote in favor of the Merger.

22. The Proxy contains materially incomplete and/or misleading information concerning, *inter alia*: the financial analyses performed by the Company's financial advisor, Cain Brothers ("Cain"), a division of KeyBanc Capital Markets Inc., in support of its fairness opinion. As part of Cain's fairness opinion, Cain reviewed, among other things, "certain other internal information, primarily financial in nature, including projections, concerning the business and operations of the Company furnished to us by the Company for purposes of our analysis." Proxy at D-1.

23. The Proxy states that in rendering its fairness opinion, Cain performed an *Analysis of Comparable Publicly Traded Companies* by reviewing and comparing "certain available financial data, ratios and trading multiples for comparable publicly traded multi-state medical service group practices" that "were comparable to the company's current operations for purposes of this analysis." Proxy at 36. As part of its analysis, Cain "reviewed data, including EV as a

6

multiple of LTM and estimated calendar year 2018 Adjusted EBITDA based on S&P Capital IQ, Wall Street analyst research and press releases, of the company and each of the following selected publicly traded multi-site medical service group practices." *Id.* Cain presented to the Board multiples of the enterprise value ("EV") to earnings before interest, tax, depreciation, and amortization ("EBITDA") for the last twelve months ("LTM") ("EV/LTM EBITDA") and EV to EBITDA for year 2018 ("EV/2018E EBTIDA"). Cain concluded median of 12.1x and 12.6x for EV/LTM EBITDA and EV/2018E EBITDA multiples, respectively. Cain also applied a 30% discount to the median EV/2018E EBITDA multiples. However, the Proxy fails to disclose why the discount of 30% was applied to the median EV/2018E EBITDA multiples, but not to the median EV/LTM EBITDA multiples.

24. Cain also performed a *Premium Paid Analysis* by reviewing "publicly available data for 124 transactions dating back to 2014." Specifically, "[f]or each of the target companies involved in the reviewed transactions," Cain "examined the closing stock price one day, one week and four weeks prior to announcement of the transaction in order to calculate the premium paid by the acquirer over the target's closing stock price at those points in time." *Id.* While the Proxy discloses the medium premium for the precedent transactions reviewed by Cain, the Proxy fails to disclose the low, mean, and high premiums for the precedent transactions.

25. Cain also performed a *Discounted Cash Flow Analysis* ("DCF") "to demonstrate an illustrative indication of the implied present value of the company on a share price basis." Proxy at 37. The DCF "analysis of the company was based on the company's estimated fiscal 2018 results and projections provided by the company's management for fiscal years 2019 through 2022." *Id.* Further, Cain "calculated terminal values for the company by applying the growth rate in perpetuity method, which reflects GDP growth of 1.0% to 2.0%." *Id.* First, the Proxy fails to

7

disclose whether the Company's net operating losses of $1.4 million were incorporated into the DCF analysis. Second, while, Cain discounted the "cash flows and terminal values" to "present value as of December 31, 2018 using discount rates ranging from 19.0% to 22.0%," the Proxy fails to disclose any line item details for the cash flow. *Id*. They should have disclosed these line items, including projected EBIT, cash taxes, depreciation, amortization, capital expenditures, and any changes in working capital, so that shareholders can make their own determination as to the reliability of this valuation. In addition, the Proxy fails to disclose the inputs used to calculate the discount rate range, which is unusually high, compared to the below transactions in the health and medical services industries since 2007, with market caps of $25 million and up where the median discount rate range is only from 9.0% to 10.4%. Thus, Cain's discount rates range is more than twice the median of the discount rates range of the below past transactions.

| Target | Announced | Deal Value (MM) | Discount Rates |
|---|---|---|---|
| American Surgical | 2010 | $33.4 | 13.5% - 16.4% |
| Conmed Healthcare Management | 2012 | $41.7 | 15.0% - 20.0% |
| Nighthawk Radiology | 2010 | $182.1 | 9.0% - 10.5% |
| USMD Holdings | 2016 | $292.2 | 9.4% - 10.4% |
| Prospect Medical Holdings | 2010 | $315.7 | 12.0% - 14.0% |
| Assisted Living Concepts | 2013 | $454.3 | 10.1% - 11.8% |
| Symbion | 2007 | $602.6 | 11.0% - 13.0% |
| Genesis Healthcare | 2007 | $1,795.9 | 9.0% - 11.0% |
| ExamWorks Group | 2016 | $2,006.6 | 7.0% - 8.0% |
| Kindred Healthcare | 2017 | $3,875.1 | 8.5% - 9.4% |
| Vanguard Health Systems | 2013 | $4,095.9 | 7.5% - 8.0% |
| Emeritus Corp. | 2014 | $5,232.1 | 8.0% - 9.0% |
| Manor Care | 2007 | $5,936.1 | 9.8% - 10.3% / 7.6% - 8.2% |
| Health Management Associates | 2013 | $7,527.1 | 7.0% - 8.0% / 6.5% - 8.0% |
| **Median** | | | **9.0% - 10.4%** |

8

26. In respect to Cain itself, the Proxy fails to disclose whether Cain received any fees from either Birner or Mid-Atlantic Dental over the prior two years. Given that there were at least ten other potential acquirers, it is readily conceivable that Cain favored the Proposed Transaction between Birner and Mid-Atlantic Dental over a transaction between Birner and any of the other potential acquirers. As such, shareholders are entitled to disclosure of the compensation received by Cain from either Birner or Mid-Atlantic Dental over the prior two years to determine whether Cain was suffering from conflicts of interest.

27. The non-disclosed information discussed above, would be material to Birner shareholders in deciding how to vote their shares, as the real informative value of the financial advisor's work is not in its conclusion, but in the valuation analyses that buttress that result. When a financial advisor's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion, as well as the key multiples and range of multiples used in those analyses, must also be fairly disclosed.

28. Further, the non-disclosed information discussed above prevents shareholders from understanding the context of the figures or consider whether any of the inputs thereto or ranges derived therefrom are anomalous. Absent this information, Birner shareholders are unable to determine whether the Proposed Transaction is indeed fair and in their best interest.

29. There are also material omissions in the Proxy concerning the process leading up to the Merger, in respect to the various confidential agreements ("CAs") entered into by Birner and eleven potential strategic and financial acquirers.

30. As part of the Background section of the Proxy, it states that between July and September 2018, Birner entered into eleven separate confidentiality agreements with various parties including Company A, Company B, Company C, and Mid-Atlantic Dental. Proxy at 23.

9

31. However, the Proxy fails to disclose the material terms of the CAs as they are relevant to shareholders to know whether certain potential acquirers received different terms in their respective CAs. Significantly, the Proxy fails to disclose whether the CAs entered into by Mid-Atlantic Dental is the same CAs entered into by other potential acquirers including Company A, Company B, and Company C. Thus, it is unclear whether Mid-Atlantic Dental received certain and/or additional rights in its CA, not given to other potential acquirers that signed their respective CAs.

32. Without the terms of the CAs disclosed, it is difficult for shareholders to determine whether parties such as Company A, Company B, and Company C to these agreements were provided with the same right to submit confidential proposals following news of a definitive merger agreement, or whether these CAs contained standstill provisions, and if so, whether the standstill provisions had don't-ask-don't-waive ("DADW") provisions[1] and/or sunset provisions, or whether the counterparties could seek a waiver of such standstills to make an unsolicited offer to acquire the Company.

33. If these CAs entered into by certain potential acquirers contained standstill provisions, these parties are likely prohibited from coming forward with a topping bid if waivers do not exist in the CAs.

34. The omission of the details regarding these CAs in the Proxy renders it materially misleading because it gives the false impression that the counterparties who had entered into negotiations with the Company prior to its signing of the Merger Agreement have the ability to

---

[1] A DADW provision prohibits potential acquirors from even *asking* the target to waive the standstill prohibitions to allow them to submit topping bids. Several courts have noted that DADW provisions violate a target board's duty to act reasonably, in an informed matter, and in furtherance of the goal of seeking the highest possible sales price, and therefore have ordered injunctive relief when a danger existed that such clauses prevented superior bids from arising.

come forward with a topping bid, when they may, in fact, be contractually prohibited from doing so. Thus, the omission of this information renders all references to the CAs in the Proxy materially false and misleading.

35. Without the foregoing material information, the Company's shareholders will not be able to fully understand and interpret the financial analyses, including their impact on the fairness of the Merger Consideration, when determining whether to vote in favor of the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Birner (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

37. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of August 3, 2018, there were 1,881,761 shares of Birner common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy as currently composed.

      c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

      d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

      e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

      f.      A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

      g.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder
(Against All Defendants)**

38.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."

15 U.S.C. § 78n(a)(1).

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

41. Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

42. As discussed herein, the Proxy misrepresents and/or omits material facts concerning the Merger.

43. Defendants prepared, reviewed, filed and disseminated the false and misleading Proxy to Birner shareholders. In doing so, Defendants knew or recklessly disregarded that the Proxy failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. The omissions and incomplete and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

45. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing Cain's complete financial analyses purportedly summarized in the Proxy.

46. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

47. Birner is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

48. Defendants knew that Plaintiff and the other members of the Class would rely upon the Proxy in determining whether to vote in favor of the Merger.

49. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14a-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to vote in favor of the Merger.

50. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### Claim for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Birner within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Birner, and participation in and/or awareness of the Company's

14

operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were thus directly connected with and involved in the making of the Proxy.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

56. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff and the Class have no adequate remedy at law.

15

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.       Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.       Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.       Directing the Individual Defendants to disseminate an Amendment to the Company's Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 29, 2018          Respectfully submitted,

/s/ *Jeffrey A. Berens*
Jeffrey A. Berens
BERENS LAW LLC
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
Email: jeff@jberenslaw.com

*Local Counsel for Plaintiff*

16

        WOLF POPPER LLP
Carl L. Stine
Fei-Lu Qian
845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
Email: cstine@wolfpopper.com
        fqian@wolfpopper.com

*Counsel for Plaintiff*

# PLAINTIFF CERTIFICATION
## UNDER THE FEDERAL SECURITIES LAWS

I, David Pill, hereby state:

1. I have reviewed the complaint against Birner Dental Management Services, Inc. ("Birner") and certain of its directors and officers. I have authorized the filing of a complaint and lead plaintiff motion on my behalf.

2. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

3. I currently own 81 Birner shares, which I bought [inherited] on 4/11/16, at a price of $9.20 per share. [Basis]

4. I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

5. During the three-year period preceding the date of signing this certification, I have sought to serve as a representative party on behalf of a class in the following private actions arising under the federal securities laws:
   *Pill v. Kapstone Paper & Packaging Corp., et al.*, 1:18-cv-01290-UNA (D. Del.)
   *Pill v. Time Inc., et al.*, 1:17-cv-09971 (S.D.N.Y.)
   *Pill v. Westar Energy, Inc., et al.*, 5:17-cv-04086 (D. Kan.)
   *Pill v. Angie's List, Inc., et al.*, 1:17-cv-02461-JMS-MJD (S.D. Ind.)
   *Pill v. Tribune Media Co., et al.*, 1:17-cv-00961-UNA (D. Del.)

6. I will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, including lost wages relating to the representation of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of October, 2018

By: _____
David Pill